## FARLEY and Others *v.* ELLER.

VARIANCE.—Under the code, no variance between the pleadings and the proof is material, unless it is proved to the satisfaction of the court that it has misled the adverse party to his prejudice.

STATUTE OF FRAUDS.—Where, in an action for the specific performance of a contract for the sale of lands, there has been a finding by a jury for the plaintiff, over a plea of the statute of frauds, upon a clear preponderance of proof, under proper instructions of the court, it is not the duty of an appellate court to interfere, notwithstanding the rule in equity, that to take a case out of the statute on the ground of part performance, the act done should be clear, definite and referable only to the contract, and that the contract itself be established, in all its terms, by clear, definite and unequivocal proof.

SAME.—INSTRUCTIONS.—In view of the rule of the code as to variances, it was held that the refusal of the court to instruct the jury, in such case,

that the act of part performance must be referable only to the "contract alleged in the complaint," was not erroneous.

MORTGAGE.—The statute providing that no power of sale shall be contained in a mortgage, does not prevent the mortgagee from acting as the agent of the mortgagor in selling the mortgaged premises, where the agency is not created by the mortgage.

SPECIFIC PERFORMANCE.—HUSBAND AND WIFE.—In an action to enforce a contract for the conveyance of land, against a husband and wife and their vendee, who was charged with notice of the plaintiff's equity, it was held that a recovery by the plaintiff did not annul the deed of the husband and wife to the purchaser with notice, but transferred the legal title from him to the holder of the prior equity, and that the wife was estopped by her deed.

APPEAL from the *Hamilton* Circuit Court.

GREGORY, C. J.—Suit by *Absalom Eller* against the appellant for the specific performance of a parol contract. The complaint avers that *Freeman Farley* was indebted to one *Harrison* in the sum of $3,000, payable at *Harrison's* bank, in *Indianapolis,* due in six months after the 5th of *June,* 1861, upon which note the plaintiff and the defendants *Beck, Jacob Eller* and *Dawson* became accommodation endorsers for *Freeman Farley;* that the latter and his wife, *Clementine,* executed to *Beck, Jacob Eller* and *Dawson* a mortgage on the land in controversy to secure and indemnify them against loss by reason of their endorsement; that about the time the note became due, the plaintiff made an agreement with *Freeman Farley, Beck, Dawson,* and *Jacob Eller,* that the three latter should release and transfer to the plaintiff any and all claims, incumbrances, title or liens held by them upon the land; that the plaintiff would pay off and discharge the principal of the note to *Harrison,* and release them from further liability as endorsers; that the defendant *Freeman Farley,* about the time last aforesaid, agreed with the plaintiff that if the latter would pay off and discharge the principal of the note to *Harrison,* and discharge the maker thereof from any further liability thereon, he would execute to the plaintiff a deed in fee for the land, free from all incumbrances; and the more effectually to make and conclude the obligations of *Beck, Jacob Eller* and *Dawson* to the

plaintiff, they did, on &c., execute to the plaintiff a title bond, by which they bound themselves to make to the plaintiff a deed in fee for the land, upon the payment to them of $3,000; $1,500 to be paid by the 25th of *December*, 1862, and the residue by the 25th of *December*, 1863, which sums the plaintiff paid to the obligors, who paid the same on the note to *Harrison;* that the sole consideration for the title bond was the payment of the debt to *Harrison* by the plaintiff; that the plaintiff entered into the possession of the land, in pursuance of his contract with the defendants, with the full knowledge and consent of each of them, and continued therein for two years, making valuable and lasting improvements thereon; that *Freeman Farley* and his wife, though often requested, have failed to execute the deed to the plaintiff, but have fraudulently conveyed the land to the defendant *Samuel Farley*, who took the conveyance with a full knowledge of the equities of the plaintiff.

The defendants *Freeman Farley, Clementine Farley, Samuel Farley* and *Dolley Farley* answered by the general denial. The defendants *Beck, Jacob Eller* and *Dawson* answered as follows: That a short time after the execution of the mortgage, one *Gustavus H. Voss* caused an execution to be issued on a judgment recovered by him in the Court of Common Pleas for *Hamilton* county, against the defendant *Freeman Farley* and one *James Farley*, and placed it in the hands of the sheriff, who levied it on the land in controversy, and sold it to the respondents *Beck, Jacob Eller* and *Dawson;* that they took from the sheriff a certificate of purchase; that some time after their purchase, without the knowledge or consent of *Freeman Farley*, they sold the land to the plaintiff, and executed to him the title bond set out in the complaint; that after the plaintiff had paid the purchase money, and before the respondents had procured from the sheriff a deed for the land, the defendant *Freeman Farley* commenced suit against them in the Common Pleas Court of said county to set aside the sheriff's sale; that at the *January* term thereof, for the year 1865, he obtained a decree against them, annull-

ing and setting aside the sale, and a transcript of the proceedings and decree is made a part of the answer; wherefore they say it has never been in their power to comply with the conditions of their bond; that immediately after discovering this fact, on &c., they tendered to the plaintiff $3,550, the amount of money paid by him, with interest then due thereon, which the plaintiff refused to accept; that they bring the money into court for the plaintiff; that the respondents expressly deny all the material allegations contained in the complaint, not herein expressly admitted.

The plaintiff was not a party to that suit, and was in no way bound by it. The plaintiff replied to this answer. Trial by jury. Verdict for the plaintiff. The jury also answered special interrogatories, put to them by the court. A motion for a new trial was overruled. The appellants *Freeman, Clementine, Samuel* and *Dolly Farley* moved the court for judgment in their favor on the special findings, notwithstanding the general finding for the plaintiff.

The jury found, among other things, that the sale made of the land by *Freeman Farley* to the plaintiff was made by *Jacob Eller, Beck* and *Dawson,* as the agents of *Freeman Farley,* and that the latter had, after the sale was so made, ratified and confirmed it. The evidence is made a part of the record. The first objection is that the evidence does not make out a case like the one charged in the complaint. Under the code, no variance is material unless it is proved to the satisfaction of the court that it has actually misled the adverse party to his prejudice, and where the variance is not material, the court may direct the fact to be found according to the evidence. 2 G. & H. § 94, p. 114, *et seq.* The evidence in this case tends to support the material allegations of the complaint, and it cannot be said that there is a failure of proof within the meaning of the 96th section of the code.

It is urged that the proof is not sufficient to take the case out of the statute of frauds. We hold that where there is a finding of a jury on a clear preponderance

of proof, under a proper instruction of the court, that it is not the province of this court to interfere in such cases, notwithstanding the well recognized rule in equity, that "in order to take a case out of the statute, upon the ground of part performance of a parol contract, it is not only indispensable that the act done should be clear and definite, and referable exclusively to the contract; but the contract should also be established, by competent proofs, to be clear, definite, and unequivocal in all its terms." 2 Story's Eq. § 764.

It is claimed that the court erred in giving its fifth instruction, and in refusing the fourth, asked by the defendants. The court charged the jury " that it is a general rule of law that a contract for the sale and conveyance of land must be in writing, in order to be binding on the parties; but there are exceptions to this general rule, and the exceptions are, where parties make a verbal agreement for the sale and conveyance of land, and in pursuance of the agreement the purchaser pays part or all of the purchase money, and takes possession of the land by the express or implied consent of the seller, or his authorized agent, and makes lasting and valuable improvements; or if, in pursuance of the agreement, the purchase money, or some part of it, is paid, and possession given by the seller, or his authorized agent, in pursuance of the contract, the contract is a binding one in law, as much so as though it was in writing."

The instruction asked by the defendants, and refused by the court, is as follows: " To constitute an exception, and in order to take this case out of the statute of frauds, upon the ground of part performance of a parol contract, it is not only indispensable that the plaintiff should have shown by a preponderance of the evidence to your satisfaction, that the acts done are clear and definite, and referable exclusively to the contract alleged in the complaint, but the contract itself must also be established, by competent proof, to be clear, definite and unequivocal in all its terms. If the terms are uncertain or ambiguous, or not made out by sat-

isfactory proofs, a specific performance will not be decreed, and you should find for the defendants."

The instruction given, in view of the provisions of the code referred to in this opinion, embodied the law on this subject, and is substantially the same as that refused, with the exception, perhaps, of the reference to the contract alleged in the complaint.

The other objections to the instructions of the court are answered by our view of the code. For example, it is urged that the court erred in refusing to charge the jury that, "in order to entitle the plaintiff to a verdict against *Freeman Farley*, the jury must be satisfied by a preponderance of evidence that he and the plaintiff made the same identical contract set forth in the complaint, and that the plaintiff performed his part of that contract in the manner alleged. Proof of a different contract, or of a performance in a different manner, or at a different time, is not sufficient to entitle the plaintiff to a specific performance of the contract set forth in the complaint." It is clear, to our minds, that this instruction was rightly refused by the court, if any effect whatever is to be given to sections 94 and 95 of the code.

It is claimed that the court erred in refusing to render judgment for the defendants *Freeman, Clementine, Samuel* and *Polly Farley*, on the special findings of the jury. It is claimed that *Beck, Dawson* and *Jacob Eller* could not act as agents for *Freeman Farley* in the sale of the land mortgaged to them by the latter; that such a sale is void under the third section of the act concerning mortgages, (2 G. & H. 355) by which it is provided that "no mortgage of real estate, or instrument operating as, or having the legal effect of, a mortgage, hereafter executed, shall authorize the mortgagee to sell the mortgaged premises, but every such sale shall be made under a judicial proceeding."

There is nothing in this provision which would prevent a mortgagee acting as the agent of the mortgagor in the sale of the mortgaged premises. Such a sale would, of course,

have to be good independent of, and by an authority disconnected with, the mortgage. The sale was not made by *Beck*, *Dawson* and *Jacob Eller* as mortgagees, under a power in the mortgage, but was made by them as the agents of *Freeman Farley*. The case is within the maxim, "what a man does by another, he does by himself."

It is claimed that the decree against *Clementine Farley* is erroneous; that she was not bound by the executory contract to convey.

In *Martin* v. *Mitchell*, 2 Jac. & Walk. 413, where the husband and wife had entered into an agreement to sell her estate, the master of the rolls held that the agreement was void as to the wife, for a married woman had no disposing power, and a court of equity could not give any relief against her on such a contract. She could not bind herself by contract, except in the execution of a power and in the mode prescribed; nor would the court compel the husband to procure his wife to join in the conveyance. This subject is discussed by Chancellor Kent, in his Commentaries. 2 Kent 167.

It is charged in the complaint that *Freeman Farley* and *Clementine*, his wife, joined in a conveyance of this land to *Samuel Farley*, and in the evidence it seems to be taken for granted that *Samuel Farley* is the present owner of the land, and a witness was, without objection, permitted to prove that soon after the tender to the plaintiff of the money he had paid for the land, it was conveyed to *Samuel Farley;* but the deed from *Freeman Farley* and wife to *Samuel Farley*, if such a deed ever was executed, is not in the record. The jury found that *Samuel Farley* had notice of the parol contract set up in the complaint, before he purchased and had the land in controversy conveyed to him.

The conveyance, if any was made, from *Freeman Farley* and *Clementine Farley* to *Samuel Farley*, was good between the parties, and that deed would estop the wife from setting up any title to the land as long, at least, as it has any legal

existence. It is true, according to some of the cases, when such a deed is set aside as fraudulent and void in a proceeding by the creditors of the husband, the deed ceases to have any legal existence, and the wife is not estopped; but even this is otherwise decided in other cases.

In the case under consideration, the plaintiff succeeded on the ground that he had a prior equity, of which the alienee had notice. The title of *Samuel Farley* was held by him, subject to the prior equity of the appellee. It cannot be said, that the effect of the decree was to set aside the deed from *Freeman Farley* and wife to *Samuel Farley* as fraudulent and void. In a proceeding by a creditor, the conveyance is put out of the way as an impediment to the creditor's execution. Here, the effect is to convey the legal title from the alienee with notice, to one having the prior equity. In such a case, it seems to us that the wife is estopped by her deed. If this is the condition of things, then there was no error committed of which *Clementine Farley* can complain.

The judgment is affirmed, with costs.

*D. Moss* and *W. March*, for appellants.

*E. S. Stone* and *J. W. Evans*, for appellee.